**FOR PUBLICATION**



**FILED**

Apr 12 2012, 8:46 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**WILLIAM W. DRUMMY**
**HOLLY A. REEDY**
Wilkinson, Goeller, Modesitt, Wilkinson &
 Drummy, LLP
Terre Haute, Indiana

ATTORNEY FOR APPELLEE:

**JERRY GARAU**
Garau Germano Hanley & Pennington, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN MORSE, M.D., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A05-1103-CT-140 |
| | ) | |
| JEFFREY WAYNE DAVIS, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael J. Lewis, Judge
Cause No. 84D06-0901-CT-576

**April 12, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

John Morse, M.D., appeals the judgment against him following a jury trial on Jeffrey Davis' complaint alleging medical malpractice for failure to diagnose Davis' colon cancer. Morse presents three issues for our review, namely, whether the trial court abused its discretion when it excluded from the evidence at trial certain expert testimony, a medical record, and the testimony of a treating physician and nurse. We hold that the trial court did not abuse its discretion in excluding that evidence.

We affirm.[1]

**FACTS AND PROCEDURAL HISTORY**

On April 26, 2004, Davis, who was then thirty-five years old, sought medical treatment with Dr. Morse, a gastroenterologist, and Davis reported the following symptoms: "problems after meals, nausea, occ[asional] vomiting, occ[asional rectal bleeding," upper stomach pain, and occasional diarrhea. Appellant's App. at 98. Davis also reported a history of taking daily doses of Aleve for pain management. Dr. Morse noted in Davis' chart that Davis' mother was a former patient of his. Dr. Morse had treated Davis' mother for colon cancer, but that fact was not noted in Davis' chart.

Dr. Morse conducted a physical examination of Davis, including a digital rectal examination, and Dr. Morse ordered a hemoccult test[2] and an endoscopy known as an EGD in an effort to determine the underlying cause of Davis' symptoms. The hemoccult test was negative for blood in Davis' stool. The EGD revealed that Davis had severe gastritis of the stomach, duodenitis, and a gastric ulcer. Dr. Morse instructed Davis to

---

[1] We heard oral argument in this case on March 5, 2012.

[2] A hemoccult test is used to determine whether blood is present in a patient's stool.

stop taking Aleve, and he prescribed medications for Davis to take. Dr. Morse did not order either a sigmoidoscopy or colonoscopy.

Davis next saw Dr. Morse exactly one year later, on April 26, 2005. On that date, Davis reported having nausea and sinus congestion, and he requested refills on medications in anticipation of his imminent relocation to Arizona. Dr. Morse's office chart for Davis does not show any other reported symptoms on that date. Dr. Morse did not ask Davis whether his rectal bleeding had resolved since the 2004 office visit.

Davis moved to Arizona and, on July 24, 2006, he saw Dr. Jeffery Willden and reported a history of "chronic diarrhea 2-3 yrs intermittently [with] blood in stool[.]" Id. at 114. Dr. Willden referred Davis to Dr. Leff, a gastroenterologist, who ordered a colonoscopy for Davis, which was performed on August 31. The results of the colonoscopy revealed a "fairly sizable mass lesion in the sigmoid colon[.]" Trial Transcript, Vol. 1 at 108. Following surgery to remove the mass in Davis' colon, Davis was diagnosed with "very advanced stage four cancer" involving the bowel, "adjacent lymph nodes," and his liver. Id. at 109.

Davis' medical records do not reflect that he revealed his family history of colon cancer to any of his physicians, including Dr. Morse, until after his cancer diagnosis in 2006. In addition, Davis' medical records do not reflect that he reported rectal bleeding at any time, to any physician, other than to Dr. Morse in 2004 and then again to Dr. Willden after he moved to Arizona. Those records directly conflict with Davis' recollection that in 2004 he had discussed his mother's colon cancer with Dr. Morse and that, in 2005, he had reported to Dr. Morse that he continued to have rectal bleeding.

3

On January 16, 2009, Davis and his wife, Janette, filed a complaint[3] against Morse and Associated Physicians & Surgeons Clinic, L.L.C., d/b/a AP&S Clinic ("AP&S Clinic")[4] seeking damages for alleged medical malpractice for failure to diagnose Davis' colon cancer. Pursuant to the Indiana Medical Malpractice Act ("the Act"), a medical review panel was convened to consider the evidence, and the panel concluded that "[t]he evidence does not support the conclusion that [Dr. Morse] failed to meet the applicable standard of care as charged in the complaint." Def.'s Exh. Q. In reaching their conclusion, the panel members "made an assumption that Dr. Morse wasn't provided with Jeff Davis' family history of colon cancer" because "it wasn't [written] on the initial note" from the 2004 office visit. Trial Transcript, Vol. 3 at 505. And each of the panel members opined that, without knowledge of Davis' family history of colon cancer, Dr. Morse complied with the applicable standard of care when he did not order either a sigmoidoscopy or colonoscopy for Davis. In contrast, Davis' expert witness, Dr. John Bond, testified in his deposition and at trial that, given Davis' report of occasional rectal bleeding and Dr. Morse's failure to discover an explanation for that bleeding, the applicable standard of care required Dr. Morse to order either a sigmoidoscopy or colonoscopy, regardless of any family history of colon cancer.

During a final pre-trial hearing on February 15, 2011, Davis moved to strike two defense witnesses: a physician, Dr. James Welch, who saw Davis for unrelated medical

---

[3] The Davises were required to file a proposed complaint for damages with the Indiana Department of Insurance under the Indiana Medical Malpractice Act. We assume for purposes of this appeal that a proposed complaint was filed, but neither party has included a copy of the proposed complaint in its appendix. And neither party references a date for that filing in its brief on appeal. We assume that the proposed complaint was timely filed.

[4] Both Janette Davis and AP&S Clinic were dismissed as parties prior to trial.

4

treatment in 2003, 2004, and 2005; and a nurse, Tammy Austin, who wrote down Davis's complaints during the office visit with Dr. Morse in 2005. Dr. Morse's counsel intended to elicit testimony from Dr. Welch that, when he saw Davis on those three occasions, Davis did not complain of rectal bleeding.[5] And Austin would have testified that Davis did not report any rectal bleeding when she saw him in 2005. With respect to Austin's proposed testimony, defense counsel admitted that "[t]heoretically that argument could be made without calling the witness at all, because the record is what the record says." Hearing Transcript at 22. Both witnesses would have supported Dr. Morse's argument that Davis was contributorily negligent by not reporting his symptoms to Dr. Morse. It is undisputed, however, that Davis reported occasional rectal bleeding to Dr. Morse in April 2004.

Davis had previously submitted interrogatories to Dr. Morse, one of which asked: "If you contend that [Davis] in any way contributed to cause his injuries, please set forth in detail all facts on which you base this contention and identify by name, address and title any and all witnesses to the facts asserted in this response." Appellant's App. at 48. Dr. Morse responded, "At this time, I am not aware that [Davis] caused or contributed to causing his alleged injuries. Discovery and investigation are ongoing." Id. Then, after the time for discovery had expired and approximately two weeks prior to trial, Dr. Morse supplemented his answer to that interrogatory identifying Dr. Welch and Austin as witnesses on the issue of contributory negligence. Davis moved to strike both witnesses on the basis that Dr. Morse did not timely supplement his interrogatory answer and that

---

[5] Davis saw Dr. Welch for medical treatment unrelated to his gastrointestinal issues.

5

he was prejudiced in that he did not have an opportunity to depose either witness prior to trial. The trial court ruled that neither witness would be permitted to testify at trial. By this time, the trial date had been scheduled for well over a year.

Davis also moved in limine to exclude from evidence a medical history questionnaire submitted to Dr. Willden in December 2005,[6] which did not indicate a family history of colon cancer. When Dr. Morse sought to admit that questionnaire, his counsel made an offer of proof, whereby Davis testified that he could not recall whether he had filled out the questionnaire or whether someone else had filled it out. Davis testified that while some of the information on the questionnaire was accurate, other information was inaccurate. The trial court ruled that the questionnaire, identified as Defendant's Exhibit H, was inadmissible.

Finally, Davis moved in limine to preclude "[a]ny opinion, including the written medical review panel opinion, from Drs. Blitz, Brown or Bishop stating that Dr. Morse complied with the standard of care."[7] Appellee's App. at 23. In support of that motion, Davis' counsel explained to the trial court as follows:

> [We are] attempting to prevent the witnesses from expressing an opinion on the credibility of witnesses. In this case, Mr. Davis has testified under oath that he told Dr. Morse about his family history of colon cancer when he saw him on April of 2004. Dr. Morse asserts that he did not tell him about his family history of colon cancer when he was seen in April of 2004. So there is a clear genuine issue of material fact, there is a factual dispute with respect to that question. The panel doctors have testified that their opinion that Dr. Morse complied with the standard of care assumes that Dr. Morse was not told about Jeffrey Davis' family history. In other words, <u>what the defendants' experts have done, the panel doctors, is they have made a</u>

---

[6] Davis saw Dr. Willden on that date for treatment of sinusitis.

[7] The medical review panel opinion was admitted into evidence, and that is not an issue on appeal.

credibility determination in forming their expert opinion[s]. And that is improper, your honor. [T]he panel doctors are not allowed to make credibility determinations. That is a function that is reserved solely for the jury.

\*\*\*

Now, we're not saying that [defense counsel] can't call these witnesses and he can certainly say doctor if you assume that Mr. Davis did not tell Dr. Morse about the family history of colon cancer, did Dr. Morse comply with the standard of care? That's an appropriate question and the defendants can answer that. But the defendant can't say, no Dr. Morse complied with the standard of care because we don't believe that Jeffrey Davis told him about his [family] history of colon cancer. That's an improper credibility determination. The only way they can testify is by assuming facts one way or another. On cross we can say, do you assume he did tell him about the family history, did Dr. Morse (inaudible) and they'll say yes. That's appropriate, that's an appropriate function of the expert. It's not appropriate for them to get up here and do what they tried to do in their depositions which is say, well yes I didn't believe Jeffrey Davis because of what I saw in the subsequent records and because I think if he would have told him, Dr. Morse would have written that down and all these things, they don't get to do that, and that's what our motion is based upon.

Hearing Transcript at 52-55 (emphases added).

The trial court then asked defense counsel whether he "agree[d] that it should be done that way, [that] credibility is determined by a jury[?]" Id. at 55. Dr. Morse's counsel replied, "I agree, your honor, but I guess maybe I viewed this motion as another bit of overreaching and that, I sure read it to look like, well they didn't want any opinions coming in from defense experts, which would have left me with a gun with no bullets in it." Id. at 55-56. The trial court then clarified whether defense counsel agreed with the motion in limine as it was argued, as opposed to as it was written,[8] and Dr. Morse's counsel replied, "I think that's fair, because I think that maybe indirectly they made a credibility determination. But what they did and what I've said in my response is this,

---

[8] The parties agreed that the written motion in limine on this question was overbroad.

they look at the written record and made their determination based on what they saw in the medical record." Id. at 56.

During trial, Davis testified in relevant part that, during the 2004 office visit, he told Dr. Morse about his family history of colon cancer and requested, but was denied, a colonoscopy. And Davis testified that he had reported continued rectal bleeding during the 2005 office visit with Dr. Morse. Dr. Morse testified that Davis did not tell him about his family history of colon cancer or request a colonoscopy. And while Dr. Morse recalled that Davis' mother was a former patient of his for approximately eight years during the 1990s, he testified that he did not recall her diagnosis. Dr. Morse also testified that Davis did not report continued rectal bleeding in 2005.

Again, the medical review panel concluded that "[t]he evidence does not support the conclusion that the defendant failed to meet the applicable standard of care as charged in the complaint." Def.'s Exh. Q. Two members of the medical review panel testified at trial, Dr. David Brown and Dr. Gregory Blitz. On cross-examination, Dr. Brown testified in relevant part that in reaching their conclusion, he and the other panel members "made an assumption that Dr. Morse wasn't provided with Jeff Davis' family history of colon cancer" because "it wasn't [written] on the initial note" from the 2004 office visit. Trial Transcript, Vol. 3 at 505. And Dr. Brown clarified that he "made that assumption despite Jeff Davis' testimony that he had in fact told Dr. Morse about his family history[.]" Id.

Along those lines, Dr. Blitz testified that he had seen the family history section of Dr. Morse's chart for the 2004 office visit. And Dr. Blitz testified that "absent a positive family history of colon cancer," a colonoscopy is not required in a patient under age fifty

8

with reported rectal bleeding.  Trial Transcript, Vol. 4 at 12.  Dr. Blitz also testified that there was "no reference to rectal bleeding" in the office notes from the April 2005 office visit.  Id. at 27.  In addition, Dr. Robert Bishop, who was not a panel member, testified that he was "aware of disagreements [in the testimony] which include whether a family history was given" to Dr. Morse.  Trial Transcript, Vol. 3 at 435.  Dr. Bishop acknowledged having "heard the phrase, if it isn't in writing, it didn't happen."  Id. at 436.  Dr. Bishop also testified that Dr. Morse did not violate the applicable standard of care in treating Davis.

Nonetheless, Dr. Morse made offers to prove with respect to proffered testimony by Dr. Brown, Dr. Blitz, and Dr. Bishop as follows[9]:

> DEFENSE COUNSEL:  Dr. Bishop, if you were given the opportunity would your testimony be you do not believe Dr. Morse was made aware by Jeffrey Davis at any time that Mr. Davis had a positive family history of colon cancer; if Mr. Davis had given a positive history of colon cancer to Dr. Morse and/or the intake person in his office, such family history would have been documented on April 26, 2004, in the office visit record?
>
> DR. BISHOP:  Yes.
>
> DEFENSE COUNSEL:  Is it also your belief that likewise if Mr. Davis had . . . reported a complaint of rectal bleeding on April 26, 2005, to Dr. Morse and/or his office staff person, such complaint would have been documented in the office visit records for that day?
>
> DR. BISHOP:  Yes.

Trial Transcript, Vol. 3 at 477-78 (emphases added).

Thus, Dr. Morse wanted to elicit opinion testimony from the panel members and from his expert witness that, if Davis had told Dr. Morse about his family history of colon

---

[9] Each of the offers to prove was virtually identical.  We excerpt the offer to prove with respect to Dr. Bishop to avoid repetition.

cancer, that fact would have been documented in writing in his office chart. Likewise, Dr. Morse wanted to elicit testimony from the panel members and from his expert witness that, if Davis had reported continued rectal bleeding in 2005, that fact would have been documented in writing in his office chart. That testimony would have been in support of the contributory negligence defense, which was based on "the [alleged] failure by Mr. Davis to give information to Dr. Morse about family history [of colon cancer] on the first visit [in 2004]," as well as Davis' alleged failure to report continued rectal bleeding to Dr. Morse in 2005.[10] Hearing Transcript at 23. Dr. Morse contended at trial that Davis was contributorily negligent when he "fail[ed] to provide information that would have been important to any medical decision and would support . . . a jury instruction on contributory negligence." Id. at 24. The jury was instructed on contributory negligence.

The jury returned a verdict in favor of Davis in the amount of $2.5 million. Pursuant to the Medical Malpractice Act, the trial court reduced the verdict to the statutory cap of $1.25 million. This appeal ensued.

## DISCUSSION AND DECISION

Dr. Morse contends that the trial court abused its discretion when it excluded certain evidence at trial. Our standard of review is well settled. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Franciose v. Jones, 907 N.E.2d 139, 144 (Ind. Ct. App. 2009), trans. denied. This standard also applies to a trial court's decision to admit or exclude expert testimony. Id. We will reverse a trial court's

_____

[10] Davis presented evidence that the malpractice occurred in April 2004, when Davis' report of occasional rectal bleeding was documented in Dr. Morse's chart. Accordingly, the relevance of the 2005 office chart is disputed.

10

decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Id. A trial court's decision to admit or exclude evidence will not be reversed unless prejudicial error is clearly shown. Id.

**Expert Testimony**

Dr. Morse contends that the trial court abused its discretion when it precluded expert testimony regarding whether Davis reported his family history to Dr. Morse and whether Davis reported continued rectal bleeding to Dr. Morse in 2005. He maintains that Dr. Bishop, Dr. Brown, and Dr. Blitz "based their opinions, in part, on the absence of a family history of colon cancer in Davis' medical records." Id. at 13. And he argues that "[t]he exclusion of the basis for the experts' opinions was very prejudicial to Dr. Morse" in that the experts' opinions were "weakened and undermined by their inability to explain to the jury that they had reviewed several of Davis' medical records, and none of those records showed a history of colon cancer." Id. As we discuss below, however, the expert witnesses did so testify.

First, Dr. Morse asserts that the experts' proffered testimony was not inadmissible "simply because it may have included an ultimate factual issue to be determined by the jury." Brief of Appellant at 12. In support of that contention, Dr. Morse cites Evidence Rule 704(a), which states that testimony in the form of an opinion otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.

11

But Davis argued to the trial court that the experts' opinions were inadmissible under Evidence Rule 704(b), which prohibits testimony concerning whether a witness has testified truthfully. And in support of that contention on appeal, Davis cites Whedon v. State, 900 N.E.2d 498 (Ind. Ct. App. 2009), summarily aff'd 905 N.E.2d 408 (Ind. 2009).[11] In Whedon, the defendant proffered expert witness testimony in support of her post-conviction petition. The expert witness would have testified that the State's witnesses, who had been in jail with the defendant when she told them details about a murder, "should not be believed because they have received an incentive to testify[.]" Id. at 506. The post-conviction court excluded the expert testimony. On appeal, we observed that "[a]lthough Whedon appears to argue that Warden did not testify about the inmate witnesses' credibility in this case, this was the ultimate point of his testimony: since incentivized witnesses are less likely to tell the truth, the inmate witnesses in this case were less likely to tell the truth." Id. (emphasis added). And we concluded, "[s]imply put, '[c]redibility is not a proper subject for expert testimony.'" Id. (quoting U.S. v. Benson, 941 F.2d 598, 604 (7th Cir. 1991)). Thus, we held in relevant part that the proffered expert testimony was prohibited under Evidence Rule 704(b).

Dr. Morse maintains that the proffered testimony in this case did not go to Davis' credibility, but merely to show that the expert witnesses had concluded, after reviewing Davis' medical records, that Dr. Morse had not been provided with Davis' family history. In support of his contention that the proffered testimony was not precluded under

---

[11] Our supreme court summarily affirmed this court's opinion in Whedon. However, the court also noted that the expert testimony was properly excluded because it did not constitute newly discovered evidence, as averred by Whedon. Accordingly, the court stated that it was "not necessary to address the issue of its general admissibility." 905 N.E.2d at 409.

12

Evidence Rule 704(b), Dr. Morse cites Prewitt v. State, 819 N.E.2d 393 (Ind. Ct. App. 2004), trans. denied. In Prewitt, the defendant testified that she was sleeping five to ten feet away from her husband when he was shot to death and that the gunshot did not wake her. The trial court permitted a forensic pathologist to testify as follows:

> I had information provided to me by the police investigators at the time of the autopsy, was that this gun was discharged roughly five to ten feet away from the defendant, who, uh, was apparently sleeping in bed, or that's the story that was provided by initial scene investigations. Although I'm not a firearms expert, I have been around weapons and know how much noise they make when they're discharged and I have a very difficult time believing or understanding that a gunshot in a bathroom where you have tiles, which would cause reverberation [sic].

Id. at 413 (emphasis original).

On appeal, the defendant argued that the trial court abused its discretion when it permitted that testimony because it was "a direct attack on her credibility that invades the province of the jury, which is prohibited by Indiana Evidence Rule 704(b)." Id. at 414. We disagreed and observed that the testimony "was offered in the context of explaining why [the expert] concluded that the manner of death was a homicide" as opposed to a suicide. Id. Further, we noted that the expert's opinion "that it was unlikely that a person so close to the shooting would not be awakened by a gunshot occurring in a bathroom was based on his personal experience and perceptions of the noise made by a discharged firearm." Id.

We do not find the reasoning or holding in Prewitt applicable here. Dr. Morse's expert witnesses were not qualified to testify consistent with the offers to prove based on personal experience or perceptions. Rather, Dr. Brown, Dr. Blitz, and Dr. Bishop opined, based solely on their review of the medical records, that, despite his testimony to the

13

contrary, Davis had not, in fact, informed Dr. Morse about either his family history of colon cancer or his continued rectal bleeding in 2005. While the written records supported that conclusion, the offers to prove went beyond a comment on the lack of such evidence in the medical records and included a statement of the physicians' beliefs about what Davis had not told Dr. Morse. There is no basis under the holding in Prewitt to support the admissibility of this proffered belief testimony.

Dr. Morse also directs us to Tudder v. Torres, 591 N.E.2d 656 (Ind. Ct. App. 1992). In Tudder, the plaintiffs alleged that the defendant physicians did not inform them of the "risks and possible complications involved" with their surgeries, and one of the defendants testified that they had been so informed. Id. at 657. The medical review panel concluded that the physicians had not failed to meet the applicable standard of care. On appeal, the plaintiffs argued that "the review panel exceeded its statutory authority by resolving this conflict in the evidence when it issued its opinion." Id. And the plaintiffs maintained that the trial court abused its discretion when it admitted into evidence the review panel's opinion. Id.

In Tudder, we concluded that our opinion in Dickey v. Long, 575 N.E.2d 339 (Ind. Ct. App. 1991), aff'd 591 N.E.2d 1010 (Ind. 1992), was dispositive. In Dickey,

> the panel resolved a question of fact which did not require an expert opinion in issuing its opinion and the trial court admitted the panel opinion into evidence. On appeal, plaintiff argued that the opinion should not have been admitted because the panel had exceeded its statutory authority by issuing an expert opinion on a question of fact not requiring expert opinion. The court held that the opinion was properly admitted because I.C. 16-9.5-9-9 [now Indiana Code Section 34-18-10-23] states that "[a]ny report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant . . . ." The court also noted that the statute, by providing that the panel's opinion shall

14

> not be conclusive, that either party shall have the right to call as a witness any member of the panel, and that the member must appear and testify, protects a claimant who wants to attack the efficacy of the panel's opinion. Id.

Tudder, 591 N.E.2d at 657. And in Tudder, the plaintiffs were afforded the opportunity to examine one of the panel members in an effort to discredit the panel's opinion; the plaintiffs brought out the fact that there was a conflict in the evidence on the question of informed consent; and the jury was instructed that the panel's opinion was not conclusive on any of the issues to be determined by the jury and that the jury could disregard expert opinion as to a question of fact not requiring expert opinion. Id.

Here, Dr. Morse contends that "[t]hat is the proper procedure that should have been followed in the present case." Brief of Appellant at 12. But we find Tudder inapplicable here. Unlike in Tudder and Dickey, the issue here is not whether the medical review panel opinion was properly admitted at trial. Moreover, to the extent Dr. Morse contends that the panel members were not permitted to explain the bases for the panel opinion, that contention is not borne out by the testimony presented at trial. Indeed, Dr. Brown and Dr. Blitz testified that they had reviewed Davis' medical records, including the family history section of Dr. Morse's chart for the 2004 visit; that the applicable standard of care did not require either a sigmoidoscopy or a colonoscopy absent a family history of colon cancer; and that the panel concluded that absent knowledge of Davis' family history, Dr. Morse had not violated the standard of care. In addition, Dr. Brown testified that in reaching their conclusion, he and the other panel members "made an assumption that Dr. Morse wasn't provided with Jeff Davis' family

15

history of colon cancer" because "it wasn't [written] on the initial note" from the 2004 office visit. Trial Transcript, Vol. 3 at 505.

We hold that the trial court did not abuse its discretion when it excluded the proffered testimony. The offers to prove asked the witnesses to state whether they <u>believed</u> that Dr. Morse "was made aware by Jeffrey Davis" of his family history of colon cancer and whether they <u>believed</u> that if Davis had so informed Dr. Morse that that information would have been noted in his chart. Trial Transcript, Vol. 3 at 477-78. We follow the sound reasoning in <u>Whedon</u>. The "ultimate point" of the proffered testimony was that Davis was not truthful on the question of whether he had reported a family history of colon cancer and continued rectal bleeding in 2005. <u>See</u> <u>Whedon</u>, 900 N.E.2d at 506. That testimony was directed to Davis' credibility as prohibited by Evidence Rule 704(b). Indeed, as our supreme court recently reiterated, "no witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth." <u>Hoglund v. State</u>, No. 90S02-1105-CR-294 at *11 (Ind. March 8, 2012) (citation and internal quotation marks omitted). Dr. Morse has not shown that the trial court's exclusion of the proffered evidence was clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.

**Exhibit H**

Dr. Morse next contends that the trial court abused its discretion when it excluded from evidence Exhibit H, which is a medical history questionnaire submitted to Dr. Willden in Arizona in December 2005. Among the questions listed, Davis was asked to provide information about his mother's medical history by checking any applicable boxes

16

corresponding to different diseases, including "cancer." Appellant's App. at 94. While the questionnaire as filled out indicates that his mother is "ALIVE & WELL," none of the other boxes pertaining to his mother's medical history are checked, including the box labeled "cancer." Id. Dr. Morse sought to introduce this exhibit into evidence to buttress his claim that Davis had not informed him of his mother's history of colon cancer.

Davis objected on hearsay and relevance grounds, and Dr. Morse argued that Exhibit H was admissible under Evidence Rule 803(4),[12] an exception to the hearsay rule for "[s]tatements made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." (Emphasis added).

We hold that the trial court did not abuse its discretion when it excluded Exhibit H from evidence. First, Davis sought medical treatment from Dr. Willden on the date in question for sinusitis, so his mother's medical history with respect to cancer, or lack thereof, was not "reasonably pertinent" to the diagnosis or treatment of Davis' ailment. See id. Indeed, Dr. Morse did not elicit testimony from Dr. Willden that he had relied on that information when he treated Davis on that date. Second, even if a statement falls within Rule 803(4), the trial judge retains discretion to exclude it under Rule 403, see 13 Robert Lowell Miller, Jr., Indiana Practice, Evidence § 803.104 at 846 (3rd ed. 2007), which provides in relevant part that, although relevant, evidence may be excluded if its

---

[12] On appeal, Dr. Morse also contends that the medical record is not hearsay. But our review of the record shows that he did not make that contention to the trial court. Accordingly, that issue is waived. Likewise, Dr. Morse has waived the issue of whether Exhibit H should have been admitted under Evidence Rules 404(b), 406, or 803(3).

probative value is substantially outweighed by the needless presentation of cumulative evidence. Here, Exhibit H, showing in relevant part a negative family history of colon cancer, was merely cumulative of other such evidence, including (1) the testimony of Dr. Morse and Dr. Brown; (2) Dr. Morse's medical chart for Davis; (3) the EGD report from April 28, 2004, stating "Family history is negative for . . . colon cancer, or colon polyps," Appellant's App. at 99; and (4) Exhibit C, a medical record stating "Family [history of] . . . No Cancer-colon[,]" Exhibit C at 1. Dr. Morse has not demonstrated that the trial court abused its discretion when it excluded Exhibit H from evidence.

### Dr. Welch and Tammy Austin

Dr. Morse finally contends that the trial court abused its discretion when it excluded testimony from Dr. Welch and Austin, Dr. Morse's nurse who recorded Davis' complaints in April 2005. Again, Dr. Morse's counsel intended to elicit testimony from Dr. Welch that, when he saw Davis in 2003, 2004, and 2005, Davis did not complain of rectal bleeding.[13] And Austin would have testified that Davis did not report any rectal bleeding when she saw him in 2005.

At the final pre-trial hearing, Davis moved in limine to exclude the testimony of both proposed witnesses on the basis that Dr. Morse had failed to timely supplement an interrogatory response. Davis had submitted the following interrogatory to Dr. Morse: "If you contend that [Davis] in any way contributed to cause his injuries, please set forth in detail all facts on which you base this contention and identify by name, address and title any and all witnesses to the facts asserted in this response." Appellant's App. at 48.

---

[13] Again, Davis saw Dr. Welch for medical treatment unrelated to his gastrointestinal issues.

Dr. Morse responded, "At this time, I am not aware that [Davis] caused or contributed to causing his alleged injuries. Discovery and investigation are ongoing." Id. While Dr. Morse subsequently asserted a contributory negligence defense, he did not supplement the interrogatory until almost two weeks prior to trial. Accordingly, Davis did not have an opportunity to depose either witness on the contributory negligence issue prior to trial.[14]

On appeal, Dr. Morse maintains that the trial court abused its discretion in excluding the witnesses because Davis was not prejudiced by the failure to supplement the interrogatory response. In particular, Dr. Morse contends that Davis knew about the contributory negligence defense in April 2010, and both Dr. Welch and Austin were included on both parties' witness lists[15] submitted months before trial. Dr. Morse also asserts that the witnesses should have been permitted to testify because their testimony was "relevant to the underlying malpractice claim." Brief of Appellant at 23.

A trial court is accorded broad discretion in ruling on issues of discovery, and a reviewing court will interfere only when a party can show an abuse of that discretion. Johnson v. Wait, 947 N.E.2d 951, 962 (Ind. Ct. App. 2011), trans. denied. Due to the fact-sensitive nature of discovery issues, a trial court's ruling is cloaked with a strong presumption of correctness. Hill v. Fitzpatrick, 827 N.E.2d 138, 141 (Ind. Ct. App. 2005). Absent clear error and resulting prejudice, the trial court's determinations as

---

[14] A determination of contributory negligence would have been an absolute bar to Davis' claim. See Johnson, 947 N.E.2d at 958 (noting Comparative Fault Act does not apply to claims under the Medical Malpractice Act).

[15] While both Dr. Welch and Austin were included on the witness lists, again, Davis was not notified until approximately two weeks before trial that their testimony would go to the issue of contributory negligence.

to violations and sanctions should not be overturned. Cliver v. State, 666 N.E.2d 59, 64 (Ind. 1996) (citation omitted).

Indiana Trial Rule 26(E) requires parties to supplement discovery responses after the initial response. Johnson, 947 N.E.2d at 962. "The duty to supplement is absolute and is not predicated upon a court order." Id. (quoting P.T. Buntin, M.D., P.C. v. Becker, 727 N.E.2d 734, 738 (Ind. Ct. App. 2000)). If a party fails to supplement discovery responses concerning experts to be used at trial, the trial court can exercise its discretion and exclude the testimony of the witness. Id.

Dr. Morse does not dispute that he had an "absolute" duty to supplement the interrogatory response. See id. Rather, in essence, he maintains that any prejudice Davis suffered by the lack of a supplement to the interrogatory was trumped by the prejudice to Dr. Morse by the exclusion of the witnesses' testimony. But our review of the record indicates that any prejudice to Dr. Morse in the exclusion of the witnesses' testimony was insubstantial.

Indeed, Dr. Morse's counsel acknowledged that, with respect to Austin's proposed testimony that Davis did not report continued rectal bleeding in 2005, "[t]heoretically that argument could be made without calling the witness at all, because the record is what the record says." Hearing Transcript at 22. The same can be said for the proffered testimony of Dr. Welch, that is, the record speaks for itself. Moreover, there was other expert testimony and documentary evidence presented at trial supporting the defense theory that Davis did not inform his health care providers about his continued rectal bleeding in 2005. Given the strong presumption that the trial court properly excluded the testimony

20

of Dr. Welch and Austin, and given that their testimony was cumulative of other evidence, we cannot say that Dr. Morse has shown an abuse of discretion.

**Conclusion**

Dr. Morse has not shown that the trial court abused its discretion when it precluded testimony from Dr. Morse's expert witnesses that they believed that Davis had not advised Dr. Morse that his mother had a history of colon cancer despite Davis' testimony to the contrary. The purpose of that testimony would have been to impeach Davis' credibility on a critical issue of fact, namely, whether he had told Dr. Morse about his mother's colon cancer.[16] A determination of Davis' credibility was within the sole province of the jury, and the proffered testimony was prohibited under Evidence Rule 704(b). Likewise, Dr. Morse has not shown any abuse of discretion in the exclusion of Exhibit H or the testimony of Dr. Welch and Austin.

Affirmed.

RILEY, J., and VAIDIK, J., concur.

---

[16] Because we hold that the trial court did not abuse its discretion in excluding evidence at trial, we need not address Davis' secondary argument on appeal that any error in the exclusion of evidence was harmless. We note, however, that the evidence is undisputed that Davis reported occasional rectal bleeding to Dr. Morse in 2004, and that Dr. Morse was unable to determine the cause of that bleeding. At trial, Davis presented expert testimony that, under the circumstances, Dr. Morse should have ordered a sigmoidoscopy or colonoscopy in 2004 without regard to Davis' family history, and that evidence, without more, supports the jury's verdict.