## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 20 2016, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Theodore L. Stacy
Valparaiso, Indiana

ATTORNEYS FOR APPELLEES

Carly A. Brandenburg
Alyssa Stamatakos
Eichhorn & Eichhorn, LLP
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rita Horn and Charles Horn,

*Appellants-Plaintiffs,*

v.

Cesar Antonio Jara, M.D. and Northwest Indiana Cardiovascular Physicians, P.C.,

*Appellees-Defendants.*

September 20, 2016

Court of Appeals Case No.
64A03-1512-CT-2251

Appeal from the
Porter Superior Court

The Honorable
Mary R. Harper, Judge

Trial Court Cause No.
64D05-0801-CT-866

**Kirsch, Judge.**

[1] Following a jury trial, Rita Horn ("Rita") and Charles Horn (together, "the Horns") appeal the trial court's order excluding certain expert testimony and evidence in their medical malpractice action against Cesar Antonio Jara, M.D.

("Dr. Jara") and Northwest Indiana Cardiovascular Physicians, P.C. ("NICP") (collectively, "the Defendants"). The Horns raise several issues, of which we find the following dispositive: whether the trial court abused its discretion when it excluded the Horns' expert testimony and evidence, regarding whether Dr. Jara breached the standard of care because the procedure performed was not indicated, when the Horns failed to present that claim to the medical review panel.

We affirm.

## Facts and Procedural History

In July 2006, Rita went to her family doctor, complaining of chest pains and other symptoms. Rita had a history of coronary artery disease. Her family doctor admitted her to the hospital and consulted with Dr. Jara, an interventional cardiologist, regarding Rita's care. Dr. Jara was familiar with Rita as he had placed a stent in one of her coronary arteries in December 2005 to clear a blockage and had remained her physician in the months following the stent procedure. On July 8, 2006, Dr. Jara performed a coronary angiogram on Rita to attempt to diagnose a potential cardiac problem. During the procedure, the complication of internal bleeding occurred. Dr. Jara noticed the bleeding and notified a vascular surgeon to assist in stopping the bleeding. Rita recovered, but complained of continuing pain and difficulties stemming from the complication.

[4]     In January 2008, the Horns filed a proposed complaint with the Indiana Department of Insurance, alleging negligence against Dr. Jara and NICP related to the care provided on July 8, 2006, specifically the coronary angiogram. The Horns submitted evidence to the medical review panel, which included a written panel submission ("the Submission") and certain medical evidence. The Horns did not, however, send the medical review panel a copy of their proposed complaint. The Submission made a *res ipsa loquitor* argument that the Defendants failed to adhere to the standard of care and to properly perform the coronary angiogram, and that, if the procedure had been performed correctly, no complications would have occurred. *Appellants' App*. at 54-58. The Horns' contentions in the Submission specifically stated that the Defendants "breached the appropriate standard of care by failing to perform the catheterization and angiogram in a reasonably, careful and prudent manner." *Id*. at 58. The medical review panel rendered its opinion, finding that the evidence did not support a conclusion that the Defendants failed to meet the applicable standard of care.

[5]     On June 9, 2010, the Horns filed a complaint with the Porter Superior Court, alleging negligence against the Defendants. They later identified Dr. Stephen Joyce ("Dr. Joyce"), a cardiovascular surgeon, as an expert witness who opined that Dr. Jara breached the appropriate standard of care in performing the coronary angiogram on July 8, 2006. *Tr*. at 316, 317. Dr. Joyce also stated he believed that the procedure should not have been performed because there was nothing to indicate or warrant the procedure. *Appellants' App*. at 86. Dr. Joyce

asserted that this was because a stress test administered by Dr. Jara in the spring of 2006 had normal results. *Id.*

[6] The Defendants filed a motion to bar and a motion in limine, both of which sought to exclude any testimony regarding the Horns' allegation of negligence associated with whether the angiogram procedure was indicated. On April 17, 2014, the trial court issued an order granting the Defendants' motions, barring the Horns from introducing any evidence at trial that had not been presented to the medical review panel, and limiting the Horns to only arguing the issue presented to the medical review panel, which was "that Dr. Jara breached the appropriate standard of care by failing to perform the catheterization and angiogram procedure itself in a reasonably careful and prudent manner." *Id.* at 16. The Horns moved to certify the court's order for interlocutory appeal, which was granted by the trial court; however, this court denied the Horns' petition for interlocutory appeal.

[7] A jury trial was held, and prior to trial, the Horns raised the issue of the excluded testimony for the purpose of attempting to preserve the issue for appeal. The trial court maintained its ruling to exclude the evidence. At the conclusion of the trial, the jury returned a verdict in favor of the Defendants. The Horns now appeal.

## Discussion and Decision

[8] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Morse v. Davis*, 965 N.E.2d 148, 155 (Ind. Ct. App. 2012), *trans.*

*denied.* This standard also applies to a trial court's decision to admit or exclude expert testimony. *Id.* We will reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* Even if the trial court errs in its ruling on the admissibility of evidence, this Court will reverse only if the error is inconsistent with substantial justice. *Weinberger v. Gill*, 983 N.E.2d 1158, 1163 (Ind. Ct. App. 2013).

[9] The Horns argue that the trial court abused its discretion when it excluded certain portions of Dr. Joyce's testimony and other evidence that Dr. Jara breached the standard of care in performing the angiogram procedure because it was not presented to the medical review panel. The Horns contend that evidence of such a breach of the standard of care was presented to the medical review panel because the decision to perform the procedure cannot be separated from the procedure itself when considering the standard of care. Therefore, because they presented evidence that Dr. Jara breached the standard of care by failing to perform the procedure in a reasonably careful and prudent manner, they also presented evidence that he did so by failing to properly diagnose Rita. The Horns also claim that their contention that Dr. Jara breached the standard of care was presented to the medical review panel through their proposed complaint and through evidence they submitted.

[10] Indiana's Medical Malpractice Act ("the MMA") is a procedural mechanism for claims of medical malpractice. *Ind. Patient's Comp. Fund v. Patrick*, 929

N.E.2d 190, 193-94 (Ind. 2010). The MMA requires that before a malpractice claim is pursued in court, it must be presented to a medical review panel in a proposed complaint. Ind. Code § 34-18-8-4. After the proposed complaint is filed and the panel selected, "[t]he evidence in written form to be considered by the medical review panel shall be promptly submitted by the respective parties." Ind. Code § 34-18-10-17(a). The panel "may consult with medical authorities" and "may examine reports of other health care providers necessary to fully inform the panel regarding the issue to be decided," Ind. Code § 34-18-10-21, but must render its decision "based upon the evidence submitted by the parties." Ind. Code § 34-18-10-17(e). The panel is directed to issue an expert opinion "as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint." Ind. Code § 34-18-10-22(a). Until the panel issues its opinion, the trial court has no jurisdiction to hear and adjudicate the malpractice claim. *K.D. v. Chambers*, 951 N.E.2d 855, 864 (Ind. Ct. App. 2011), *trans. denied*. "[A] malpractice plaintiff cannot present one breach of the standard of care to the panel and, after receiving an opinion, proceed to trial and raise claims of additional, separate breaches of the standard of care that were not presented to the panel and addressed in its opinion." *Id*.

In the preset case, the Horns contend that all of their allegations regarding the breach of standard of care, including the lack of indications to perform the procedure, were presented to the medical review panel in their proposed complaint. However, the record shows that the panel of physicians that

comprised the medical review panel were never sent the proposed complaint. The proposed complaint was sent to the panel chairman, but after the panel of physicians were chosen, the panel members were not provided with a copy of the proposed complaint. *See Appellees' App*. at 47 (Chairman "did not provide the . . . panelists with a copy of the proposed complaint."). Therefore, the record shows that the panel members did not receive and were not able to consider the proposed complaint, and any allegations contained within the proposed complaint were not presented to the medical review panel.

[12] As to the evidence that was presented to the medical review panel, it consisted of the Submission and certain medical evidence attached as exhibits. In the Submission, although they make general references to alleging malpractice in connection with "diagnosing" and "diagnostic testing" of Rita, in the contention section of the Submission, the Horns state that their "contentions are straight forward and very brief" and are that the Defendants "breached the appropriate standard of care by failing to perform the catheterization and angiogram in a reasonably, careful and prudent manner." *Appellants' App*. at 54, 58. Further, in the facts section of the Submission, the Horns do not mention the cardiac stress tests administered by Dr. Jara or that he failed to consider the past normal results of these prior tests. *Id*. at 57. The facts set out in the Submission begin with the angiogram procedure being performed and then continue to discuss the complication of bleeding that occurred. *Id*.

[13] Additionally, the Horns included certain medical evidence as exhibits attached to the Submission as support for their contentions. In our review of the record,

however, we found that many of the exhibits were either not included in the record on appeal or were not able to be readily identified as the exhibits listed as being attached to the Submission. Of the exhibits we were able to discern from the record, none presented the issue of whether the angiogram procedure was indicated under the circumstances. The evidence and exhibits discussed the actual procedure, how it was performed, the complication of bleeding that occurred, how that was treated, and the outcome of the procedure; another exhibit discussed the procedure performed in December 2005 and its outcome. *Pl.'s Exs.* 3, 4, 9; *Appellants' App.* at 76-79. Because we have not been provided with the complete evidence that the Horns presented to the medical review panel in support of the Submission, we are unable to ascertain what that evidence contained and whether it supported the Horns' assertion on appeal that they presented to the medical review panel the issue of whether Dr. Jara beached the standard of care because the procedure was not indicated.[1]

[14] Based on the record before us, we conclude that the medical review panel was not presented with the question of whether Dr. Jara breached the appropriate

---

[1] The Horns also contend that their allegation regarding the improper diagnosis of Rita is not a new allegation and was presented to the medical review panel because the angiogram procedure necessarily included the decision-making process to perform the procedure. However, although "there is no requirement for . . . plaintiff[s] to fully explicate and provide the particulars or legal contentions regarding the claim," *Miller by Miller v. Mem'l Hosp. of S. Bend, Inc.*, 679 N.E.2d 1329, 1332 (Ind. 1997), we do not believe that the Horns' stated contention that the Defendants "breached the appropriate standard of care by failing to perform the catheterization and angiogram in a reasonably, careful and prudent manner," *Appellants' App.* at 58, clearly established that they were asserting a malpractice claim in reference to the failure to properly diagnose Rita.

standard of care in performing the angiogram procedure because it was not indicated. Because this issue was not presented to the medical review panel, it could not be raised at trial. The trial court did not, therefore, abuse its discretion by excluding the Horns' expert testimony and evidence related to this issue and limiting the evidence to the issue of whether Dr. Jara breached the appropriate standard of care by failing to perform the angiogram procedure itself in a reasonably careful and prudent manner.

Affirmed.

Riley, J., and Pyle, J., concur.