

**FILED**

Mar 27 2019, 9:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Theodore L. Stacy
Valparaiso, Indiana

ATTORNEY FOR APPELLEE
ANONYMOUS HOSPITAL

Michael A. Sarafin
Johnson & Bell, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE
ANONYMOUS PHYSICIAN A

Robert F. Parker
Burke Costanza & Carberry LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN B

Michael E. O'Neill
Jessica L. Mullen
O'Neill McFadden & Willett
LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN C

Sharon L. Stanzione
Alan M. Kus
Johnson & Bell, P.C.
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rosemary Quillen, as Personal Representative of Patricia Cook, Deceased, | March 27, 2019 |
| | Court of Appeals Case No. 18A-CT-2743 |
| *Appellant-Respondent,* | Appeal from the Porter Superior Court |
| v. | The Honorable Roger V. Bradford, Special Judge |
| Anonymous Hospital and Anonymous Physicians A, B, and C, | Trial Court Cause No. 64D02-1710-CT-9381 |
| *Appellees-Petitioners* | |

**Baker, Judge.**

[1] Rosemary Quillen, as personal representative of Patricia Cook, appeals the trial court's order dismissing her proposed medical malpractice complaints against Anonymous Hospital (the Hospital) and Anonymous Physicians A, B, and C (collectively, the Physicians). Quillen argues that the chair of the Medical Review Panel (the Panel) did not establish a permissible schedule for submission of evidence; that even if the schedule was permissible, she showed good cause for her failure to comply; and that even if she did not have good cause for her failure to comply with the schedule, the sanction of dismissal is inappropriate. Finding no error, we affirm.

## Facts

[2] Cook was admitted to the Hospital on November 3, 2014; while there, she was treated by the Physicians. She died on November 5, 2014.

[3] On January 15, 2016, Quillen filed a proposed complaint with the Indiana Department of Insurance alleging that Cook's death was the result of medical malpractice committed by the Hospital and the Physicians. The parties agreed on the identity of the person who would chair the Panel and eventually agreed on the members who would serve on the Panel.

[4] On May 18, 2017, the Panel was certified. That same day, the Panel Chair set the following schedule by which the parties were to tender their respective Panel submissions to him.

- August 1, 2017: Quillen's submission due to Panel Chair and other parties.
- October 1, 2017: submissions of the Hospital and Physicians due to Panel Chair and other parties.
- Quillen would have ten days after receiving those submissions to make a rebuttal submission.

Because the Panel Chair realized that the parties might object to materials submitted by each other, resulting in certain materials being omitted from the final submission, he informed the parties that he would not provide their materials to the Panel until the contents were final. Quillen did not object to the schedule or the Panel Chair's plan to withhold the submissions from the Panel until the materials were finalized.

[5] August 1, 2017, came and went with no submission provided by Quillen. On September 11, 2017, counsel for Dr. A sent an email to the Panel Chair and all other attorneys advising that Quillen's submission had not yet been tendered and that no extension of time had been requested or granted. Counsel for the

Hospital and the Physicians agreed to an extension of time permitting Quillen to submit her materials by September 25, 2017. Quillen did not object or otherwise respond in any way to these communications.

[6] The Panel Chair and the parties were mindful of a statutory deadline requiring the Panel to issue its expert opinion within 180 days of the selection of the last panel member. While the 180-day deadline could have been waived by the Hospital and the Physicians, they did not intend to waive it, and without their agreement, the Panel Chair had no authority to extend this deadline. In this case, that deadline would run on November 14, 2017.

[7] Quillen failed to submit her materials by September 25, 2017. On October 3, 2017, Dr. A turned to the trial court, filing a motion for preliminary determination and to dismiss the proposed complaint; the other Physicians and the Hospital eventually filed similar motions.

[8] On October 11, 2017, Quillen tendered her submission to the Panel Chair and the other parties. And on November 6, 2017, Quillen filed her responses to the motions to dismiss, alleging for the first time two reasons why she had failed to comply with the submission schedule. First, she argued that the schedule set by the Panel Chair exceeded his authority under the Medical Malpractice Act and, consequently, she could not be sanctioned for her failure to comply with it. Second, she asserted that she had shown good cause for her failure to comply, blaming the failure to meet the schedule on family matters that had occupied counsel's attention at some point for an unknown length of time.

After a number of inconsistent orders were entered by the trial court, on November 28, 2017, the trial court vacated all prior orders related to all pending motions[1] and set the matter for a hearing on the motions to dismiss. That hearing ultimately took place on September 17, 2018, and on October 5, 2018, the trial court entered an order summarily granting the motions to dismiss. Quillen now appeals.

## Discussion and Decision

Quillen argues that the trial court erred by dismissing her proposed complaint. A trial court's choice of sanctions upon a failure to comply with the Medical Malpractice Act (MMA) is a matter committed to the trial court's discretion. *Reck v. Knight*, 993 N.E.2d 627, 631 (Ind. Ct. App. 2013). We will affirm if there is any evidence supporting the trial court's decision and will reverse only if the decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterpreted the law. *Id.* We apply a de novo standard of review to matters of statutory interpretation. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011).

---

[1] To the extent that Quillen raises arguments related to these prior inconsistent orders, we note that the orders were vacated and are therefore moot. Consequently, we decline to address these arguments.

# I. Medical Malpractice Act[2]

Before a party brings a medical malpractice action in a trial court, the MMA requires that the proposed complaint be presented to a medical review panel and that the panel render an opinion. Ind. Code § 34-18-8-4. Once the panel is formed, "[t]he panel shall give its expert opinion within one hundred eighty (180) days after the selection of the last member of the initial panel." I.C. § 34-18-10-13(a). "Implicit in these provisions is the corresponding duty upon the parties to comply with the schedule, if one is set by the chair, and upon the parties and the panel to comply with the 180 day limit; an available remedy for any breach is court-ordered sanctions." *Galindo v. Christensen*, 569 N.E.2d 702, 705 (Ind. Ct. App. 1991).

The panel "consists of an attorney and three (3) health care providers." I.C. § 34-18-10-3(a). The attorney "shall act as chairman of the panel in an advisory capacity but may not vote." *Id.* at -3(b). The MMA provides the chair of the panel with various powers, including the power to "establish a reasonable schedule for submission of evidence to the medical review panel," though that schedule "must allow sufficient time for the parties to make full and adequate presentation of related facts and authorities." *Id.* at -3(c). This Court has explained that "[n]ecessarily, the initial burden falls upon the party submitting the proposed complaint. . . . Only when the complainant's evidence is

---

[2] It is undisputed that the MMA applies to this case.

submitted is the defendant in the proposed complaint compelled to come forward with evidence in response to the complainant's evidence." *Galindo*, 569 N.E.2d at 705-06.

[13] In a recent amendment to the MMA, the General Assembly highlighted the importance of dates and deadlines established by or pursuant to the MMA:

> The general assembly emphasizes, to the parties, the courts, and the medical review panels, that adhering to the timelines set forth in this article is of extreme importance in ensuring the fairness of the medical malpractice act. Absent a mutual written agreement between the parties for a continuance, all parties subject to this article, and all persons charged with implementing this article, including courts and medical review panels, shall carefully follow the timelines in this article. No party may be dilatory in the selection of the panel, the exchange of discoverable evidence, or in any other matter necessary to bring a case to finality, and the courts and medical review panels shall enforce the timelines set forth in this article so as to carry out the intent of the general assembly.

I.C. § 34-18-0.5-1.

## II. Failure to Comply With Submission Schedule

## A. Was the Schedule Permissible?

[14] Quillen first argues that the submission schedule created by the Panel Chair was not permissible under the MMA. Essentially, she contends that because the Panel Chair directed the parties to submit their materials to the Chair only, rather than to the physician members of the Panel, the schedule was not a

schedule for submitting evidence to the Panel as contemplated by Indiana Code section 34-18-10-3(c). Instead, she maintains that this schedule amounted to a directive compelling the exchange of discovery, which is not one of the powers given to the Panel Chair by the MMA.

[15] We cannot agree. Initially, we note that we agree with Dr. A that the Panel Chair "is not a mere conduit through which evidence passes to the physician members of the panel." Appellee Dr. A's Br. p. 19. Instead, he is, by statute, a member of the Panel. I.C. § 34-18-10-3(a). Indeed, one of the primary duties of the Panel Chair is to expedite the Panel's review of the proposed complaint, *id.* at -3(c), meaning that the chair's administrative role is central to his function as a panel member. Therefore, any distinction made between the Chair and the medical members of the Panel is a distinction without a difference.[3]

[16] Moreover, in our view, the schedule created by the Panel Chair was an eminently reasonable and efficient one. By waiting to submit the materials to the other Panel members until the evidence was finalized, the Panel Chair was

---

[3] Quillen directs our attention to *Horn v. Jara*, 63 N.E.3d 1 (Ind. Ct. App. 2016), *trans. denied*. In that case, the plaintiffs submitted a proposed complaint to the chair of the medical review panel but not to the panel members themselves. We found that "the panel members did not receive and were not able to consider the proposed complaint, and any allegations contained within the proposed complaint were not presented to the medical review panel." *Id.* at 4. *Horn* is inapposite to the instant matter, as it concerns whether each individual panel member had actual knowledge of the plaintiffs' allegations. Here, we must simply determine whether a submission of evidence to the Panel includes submission of evidence to the Chair—a statutory member of the Panel—only. *Horn* does not require us to answer that question in the negative.

able to avoid confusion and ensure that the Panel members did not spend time reviewing materials that would ultimately be objected to and removed.[4]

[17] Quillen also argues that the sequenced submission schedule created by the Panel Chair, which required her to submit her materials before the Physicians and the Hospital submitted theirs, was impermissible under the MMA. We disagree. As noted above, it has long been established that the initial duty to comply with a submission schedule falls on the complainant. *E.g.*, *Galindo*, 569 N.E.2d at 705-06. Only after the complainant's evidence has been submitted is the defendant required to submit its own evidence in response. *Id.*

[18] Finally, we note that Quillen had sixteen months from the filing of her proposed complaint to the certification of the Panel on May 18, 2017. She then had over two more months, until August 1, 2017, to submit her materials. When she failed to meet that deadline, the other parties afforded her one last extension of approximately six weeks, until September 25, 2017, to submit her materials. At no point during any of this time did Quillen object, raise a concern, or suggest that her attorney had pressing family matters rendering compliance impossible. Instead, she was silent and took no action until the other parties moved to dismiss her proposed complaint. Quillen had a great

---

[4] Quillen argues that the materials to be submitted constituted confidential attorney work product, but we fail to see how this is the case. She was required to submit the materials supporting her proposed malpractice claim—as in every case involving a medical review panel—and those materials are necessarily also provided to opposing counsel. There is no support for Quillen's claim that the Panel Chair required her to submit "the mental impressions and theories of her attorney" to opposing counsel. Reply Br. p. 10.

deal of time to assemble her materials, but she failed to do so and failed to object on any grounds. Under these circumstances, we can only find that she is not entitled to relief.

# B. Good Cause

[19] Next, Quillen maintains that even if the schedule created by the Panel Chair was permissible under the MMA, she showed good cause for her failure to abide by it. Specifically, she alleges that her attorney had family matters that prevented him from giving his full attention to the case:

> [Quillen's] attorney was also out of state for about a month readying a house to move his mother who was nearly 90, a process made necessary by a sibling stealing the majority of his mother's assets (now subject to criminal prosecution). Both the housing question and the prosecution involved a substantial amount of the undersigned's time.

Appellant's Br. p. 17.

[20] Quillen did not highlight these personal matters at any point during the months after the Panel was certified. In fact, her response to the motions to dismiss was the first time she mentioned it. Moreover, she offers no details about her attorney's situation, such as when it occurred, how long the period of inattention lasted, or why her attorney was unable even to send an email to opposing counsel and the Panel Chair telling them about the situation.

[21] Although the trial court's order contains no findings, it must have found that Quillen failed to show good cause for her untimely submission of materials to

the Panel. Based on this record, we see no reason to second-guess that conclusion.

# C. Remedy

[22] Finally, Quillen argues that even if sanctions were warranted, dismissal was improper, though she does not expand on this argument or suggest an alternative sanction.[5]

[23] It is well settled that the MMA provides the trial court with the authority to impose appropriate sanctions, including dismissal of a proposed complaint, upon a party who, without good cause shown, fails to comply with the MMA. I.C. § 34-18-10-14; *see also Reck*, 993 N.E.2d at 634-35 (affirming dismissal of a proposed complaint based on plaintiff's failure to comply with established submission schedule); *Galindo*, 569 N.E.2d at 706 (noting that under the MMA, "[d]ismissal is a sanction which a trial court has the inherent authority to order in its discretion"). In deciding what sanctions to impose, the trial court "may appropriately consider, among other things, whether the failure was intentional

---

[5] Quillen does suggest that, because there was still approximately one month remaining in the 180-day timeframe when she finally tendered her submission, the opposing parties still had time to provide their submissions and the Panel then theoretically had time to issue its opinion. Even if that were technically possible—though we note our skepticism—and the opposing parties *could* have done so, there is nothing in the MMA that *required* them to do so. As contemplated by the MMA, they instead filed a petition with the trial court for a preliminary determination of whether Quillen had violated the MMA and, if it was found that she had, requesting the sanction of dismissal. That there was still a month left means neither that the opposing parties did not have the option of seeking relief in the trial court nor that the trial court was prohibited from providing it.

or contumacious and whether prejudice resulted." *Gleason v. Bush*, 689 N.E.2d 480, 483 (Ind. Ct. App. 1997).

[24] As noted above, the General Assembly has emphasized that adherence to the MMA timelines is of "extreme importance." I.C. § 34-18-0.5-1. All parties, including trial courts and medical review panels, must "carefully follow the timelines," no party "may be dilatory in . . . the exchange of discoverable evidence," and "the courts and medical review panels *shall* enforce the timelines set forth in this article . . . ." *Id.* (emphasis added).

[25] It is apparent, therefore, that the general rule is that the MMA timelines—including submission schedules created by the medical review panel—must be carefully and strictly followed. And in this specific case, Quillen had months to comply, object, or request an extension. She neither communicated with the Panel Chair or opposing counsel nor submitted her materials until months after the initial deadline had passed—and only once the opposing parties had moved to dismiss her proposed complaint. Under these circumstances, we find no error regarding the trial court's determination that dismissal was the appropriate sanction.

[26] The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.