**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 20 2014, 8:35 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**LARRY D. BEST, JR.**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY D. BEST, JR., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 38A05-1307-PC-325 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Peter D. Haviza, Special Judge
Cause No. 38C01-0403-FA-4

**October 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Larry D. Best, Jr. appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred in denying his petition. On appeal, he raises the following restated issues for our review:

I.  Whether newly discovered evidence warranted a new trial;

II.  Whether actions by the State constituted prosecutorial misconduct; and

III.  Whether his trial counsel was ineffective for failing to enter into evidence the audio tapes from the controlled buys, which Best contends contain exculpatory evidence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts supporting Best's convictions as set forth by this court on his direct appeal are as follows:

The evidence most favorable to the convictions reveals that Travis Clem and April Grigsby, acting as confidential informants for the Portland Police Department Task Force, performed three controlled drug buys in Jay County. On October 22, 2002, Clem and Grigsby called Mindy McCowan, seeking to purchase methamphetamine. Before arriving at McCowan's apartment, Clem and Grigsby met with Detective Todd Wickey at an abandoned building. Detective Wickey provided Clem with money to purchase the methamphetamine, a transmitter, disguised as a pager, to record conversations, and a radio repeater for his vehicle. Clem and Grigsby were searched. Detective Wickey stated that Clem and Grigsby were not strip-searched. Instead, their outer clothing was searched, specifically their pockets, shoes, socks, as well as their vehicles. *Tr.* at 289. Grigsby's breast area, however, was not searched because a female officer was not present.

Detective Wickey then followed Clem and Grigsby to McCowan's apartment, and parked on a side street to avoid being seen. When they arrived, however, McCowan instructed Clem and Grigsby to return an hour later because the methamphetamine needed to be weighed. Clem, Grigsby, and Detective Wickey returned to the abandoned building to wait. While they waited, Clem and Grigsby were searched a second time, and Clem

2

returned the money to Detective Wickey.  After an hour passed, Clem and Grigsby were searched again and provided with money to purchase the methamphetamine.  Returning to McCowan's apartment, Clem entered the apartment, while Grigsby waited in the car and Detective Wickey waited on a side street listening and recording the conversation from Clem's transmitting device.  Once inside, Clem purchased methamphetamine from McCowan and Best.  Clem and Grigsby then returned to the abandoned building, followed by Detective Wickey.  Detective Wickey then searched Clem and Grigsby and recovered the methamphetamine, the transmitter, and any change remaining from the initial buy.

On October 23, 2002, Clem and Grigsby contacted Detective Wickey regarding another methamphetamine purchase from McCowan's apartment. Detective Wickey met Clem and Grigsby at the same abandoned building, performed the same vehicle and outer body searches, and provided Clem with money and a transmitter as he had for the buy on the previous day. Detective Wickey then followed Clem and Grigsby to McCowan's apartment and waited on the side street, listening and recording the conversation pertaining [to] the drug transaction.  In the back bedroom of McCowan's apartment, Clem gave Best fifty dollars in exchange for half a gram of methamphetamine.  Clem and Grigsby exited the apartment and returned to the abandoned building where they were searched, and Clem turned over the drugs and any change remaining from the buy to Detective Wickey.

On October 25, 2002, Clem arranged to buy an "eight ball" of methamphetamine from Best at Annette Lennartz's Jay County residence. Detective Wickey met with Clem and Grigsby at the same location, performed the same searches, and followed the same procedures as in the October 22, and 23, 2002 drug buys.  Once inside Lennartz's home, Clem purchased only a gram of methamphetamine because McCowan informed Clem that, "there were other people who wanted some too."  *Tr.* at 205. While Best laid on the couch, Clem gave McCowan one hundred dollars and left.  Returning to the abandoned building, Clem turned over the money, drugs, and transmitter to Detective Wickey.

*Best v. State*, No. 38A02-0604-CR-335 (Ind. Ct. App. Nov. 14, 2006).

The State charged Best with two counts of Class A felony dealing in methamphetamine and one count of Class A felony conspiracy to commit dealing in methamphetamine.  A jury trial was held on October 10-12, 2005, at the conclusion of

which Best was found not guilty of one count of dealing in methamphetamine and guilty of the other count of dealing in methamphetamine and one count of conspiracy to commit dealing in methamphetamine. He was sentenced to an aggregate term of forty-five years executed. Best filed a direct appeal, and on November 14, 2006, a panel of this court affirmed his convictions in an unpublished memorandum decision. On November 3, 2011, Best filed his petition for post-conviction relief, arguing that there existed newly discovered evidence of prosecutorial misconduct that warranted a new trial and his trial counsel was ineffective for failing to introduce into evidence the audio tapes of the controlled buys because they contained exculpatory evidence. After an evidentiary hearing, the post-conviction court issued findings of fact and conclusions thereon, denying Best's petition.[1] Best now appeals.

## DISCUSSION AND DECISION

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the

---

[1] We commend the trial court on the thoroughness and clarity of its findings and conclusions, which greatly facilitated our appellate review.

4

evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

## I. Newly Discovered Evidence

Newly discovered evidence mandates a new trial only when a defendant demonstrates that: (1) the evidence has been discovered since trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) it is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at trial. *Whedon v. State*, 900 N.E.2d 498, 504 (Ind. Ct. App. 2009) (citing *Taylor v. State,* 840 N.E.2d 324, 329-30 (Ind. 2006)), *summarily aff'd*, 905 N.E.2d 408 (Ind. 2009). "We 'analyze[ ] these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully

5

scrutinized.'" *Id.* The petitioner for post-conviction relief bears the burden of showing that *all* nine requirements are met. *Id.* (emphasis in original).

Best argues that evidence that the confidential informants ("CIs"), used by the State in the controlled buys that formed the basis of the charges against Best, were never charged with any crime after they testified at his trial constitutes newly discovered evidence warranting a new trial. He contends that, during the State's opening statement at his trial, the prosecutor promised the jury that criminal charges would be filed against the CIs and they would face jail time, but that felony charges were never filed. Best asserts that the fact that the prosecutor never filed charges against the CIs could not be discovered until well after his trial and that such information is material, relevant, and not cumulative. He also claims that the newly discovered evidence is not privileged or incompetent, is worthy of credit, and can be produced upon a retrial. Best further alleges that the newly discovered evidence is not merely impeaching but is a fundamental part of the State's case because such evidence destroys the testimony of the CIs on which his conviction was based.

In order to establish that newly discovered evidence warrants a new trial, a petitioner for post-conviction relief must show that *all* nine requirements are met. *Whedon*, 900 N.E.2d at 504. Here, the alleged newly discovered evidence is the fact that the CIs involved in the controlled buys were never charged with any crime after they testified at Best's trial. Such evidence would have been merely impeaching of the credibility of the two CIs. In order to merit a new trial, the evidence at issue cannot be merely impeaching. *Id.*

However, evidence that destroys or obliterates the testimony upon which a conviction was obtained is not appropriately considered as merely impeaching evidence.

6

*Bunch v. State*, 964 N.E.2d 274, 291 (Ind. Ct. App. 2012) (citing *Wilson v. State*, 677 N.E.2d 586, 588 (Ind. Ct. App. 1997)) (quotations omitted), *trans. denied*. In *Bunch*, the newly discovered evidence consisted of testimony that the defendant did not set multiple incendiary fires in the mobile home and offered a new, exculpatory explanation for the victim's death. 964 N.E.2d at 291. In *Wilson*, one of the State's witnesses recanted testimony that he and two children saw the defendant point a firearm at the victim and gave an affidavit, in which he stated that he and the children were not in a position to see the incident, and their testimony was fabricated. 677 N.E.2d at 588. In both of these case, the newly discovered evidence was found to warrant a new trial because it was not merely impeaching, but instead, destroyed or obliterated the testimony upon which the convictions were obtained.

Such is not the case here. The evidence that Best presented as newly discovered evidence does not reach the destroying and obliterating level as shown in *Bunch* and *Wilson*. At trial, Best's attorney attacked the credibility of the CIs. Evidence was presented that, at the time of the trial, no charges had been filed against the CIs, and agreements between the State and the CIs, which reflected what charges and sentences they were facing if they fulfilled their deal with the State, were presented to the jury. Additionally, Best has not presented any evidence that a secret side agreement existed between the State and the CIs that they would not be charged, and he has not shown any evidence that the CIs were not being truthful when they testified at trial. There was also no evidence presented to show that, at the time of trial, the State did not intend to hold the CIs to the agreements they had entered into. The evidence that the CIs were not subsequently charged with any

7

crimes was merely impeaching, and we, therefore, conclude a new trial was not warranted. The post-conviction court did not err in denying Best's petition on this issue.

## II. Prosecutorial Misconduct

Best contends that the State committed prosecutorial misconduct during his trial by improperly bolstering the credibility of the CIs during the State's opening statement, misleading the jury that he would file criminal charges against the CIs, and representing falsely that the CIs would serve jail time. Best's arguments are based again on the statements by the prosecutor during opening statement that he intended to charge the CIs and make sure they served the time they agreed to in the agreements entered into with the State.

Post-conviction proceedings are civil proceedings that provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007) (citing *Conner v. State,* 711 N.E.2d 1238, 1244 (Ind. 1999), *cert. denied*, 531 U.S. 829 (2000)), *cert. denied*, 552 U.S. 1314 (2008). Thus, if an issue was known and available but not raised on direct appeal, the issue is procedurally foreclosed. *Id*. (citing *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 1114 (2006)). Therefore, to the extent Best is arguing that the prosecutor's statements themselves, without the later knowledge that the CIs were not charged, were prosecutorial misconduct, this was an issue known and available on direct appeal and is foreclosed from our review on appeal as a free-standing claim.

Further, to the extent that Best is arguing that prosecutorial misconduct occurred

because the prosecutor stated at trial that the CIs would be charged with crimes and would serve time, but no charges were ever filed against the CIs, he is repeating his argument under his claim of newly discovered evidence. As we have already determined that the evidence was merely impeaching and, therefore, did not warrant a new trial as newly discovered evidence, we will not revisit the issue. Best's claim fails for the reasons set forth in the previous section.

### III. Ineffective Assistance

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State,* 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Id*. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010), *cert. denied*, 553 U.S. 1067 (2008).

We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry*, 904 N.E.2d at 308 (citing *Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998)). If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Id*. (citing *Wentz v. State,* 766 N.E.2d 351, 360 (Ind. 2002)). Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).

Best argues that his trial counsel was ineffective for failing to introduce into evidence the audio tapes of the controlled buys.[2] Best asserts that his trial counsel indicated in his opening statement that the audio tapes would show exculpatory evidence, but then failed to introduce the audio tapes into evidence on Best's behalf when it became evident that the State was not going to introduce them at trial. Best alleges that the audio tapes contained exculpatory evidence because there was nothing on any of the tapes that proved Best's involvement. He contends that he suffered prejudice due to his trial counsel's deficient performance because such error undermines confidence in the outcome of his case.

---

[2] In his appellant's brief, Best also contends that his trial counsel was ineffective for failing to not review the agreements between the State and the CIs to determine they were inadmissible due to their dates, for not noticing that the prosecutor admitted that the agreements were inadmissible, and for failing to object to the prosecutor's statements and references to the buy tapes and the contents of the tapes when it became evidence that the State was not going to introduce the tapes at trial. However, Best did not raise any of these arguments during his post-conviction proceedings. Therefore, these claims are waived. *Walker v. State*, 843 N.E.2d 50, 58 n.2 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied*, 549 N.E.2d 1130 (2007).

10

Best argues that, had his trial counsel introduced the audio tapes at trial, they would have shown that he was not involved in the transactions that were the basis for the charges, and he was, therefore, prejudiced by the failure to introduce the audio tapes. However, at trial, the audio tape from the October 22 controlled buy was suppressed because it was "highly not understandable." *Appellant's App*. at 19. Additionally, Best was found not guilty of the dealing in methamphetamine count that concerned the October 22 transaction. Further, no one contended that Best's voice could be heard on the audio tape from the October 25 controlled buy. The State charged Best with conspiracy to commit dealing in methamphetamine based on the October 25 transaction and contended that Best set up the transaction through a separate telephone call that was not recorded. As for the audio tape from the October 23 transaction, no one at trial contended that Best's voice was not on the recording. On the recording, there is a conversation between Clem and a man regarding the transaction. Clem and Grigsby both testified that Best was present and that Best was the one who gave Clem drugs in exchange for money. Detective Wickey testified that he could hear a man's voice on the recording, but he was not familiar with Best's voice and could not identify him as the man on the recording. Best has not shown how the result of the proceeding would have been any different if the audio tapes would have been introduced. We conclude that his trial counsel was not ineffective for not introducing the audio tapes at trial. The post-conviction court did not err in denying his petition for post-conviction relief.

Affirmed.

BAKER, J., and ROBB, J., concur.