## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2016, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Vickie Yaser
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Larry G. Sloan,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 30, 2016

Court of Appeals Case No.
45A05-1508-PC-1127

Appeal from the
Lake Superior Court

The Honorable
Diane Ross Boswell, Judge
The Honorable
Natalie Bokota, Magistrate

Trial Court Cause No.
45G03-1310-PC-14

**Kirsch, Judge.**

[1] Larry G. Sloan ("Sloan") appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred in denying his petition. On appeal, he raises the following restated issues for our review:

> I. Whether Sloan received ineffective assistance of his trial counsel during sentencing on the basis that his counsel failed to present evidence of his mental illness as a mitigating factor; and

> II. Whether evidence concerning Sloan's mental illness constituted newly discovered evidence and warranted a reduced sentence.

[2] We affirm.

## Facts and Procedural History

[3] On November 6, 1990, M.S., who was seven weeks old at the time and the daughter of Sloan, was taken to the emergency room because of profuse bleeding from her rectum. While examining M.S., the attending physician observed multiple bruises in various stages of healing all over the infant's body. The doctor also observed a large tear between the infant's vagina and rectum, which was the cause of the bleeding. The tear was so severe that a portion of the baby's bowels was visible. Neither the doctor nor the nurse had ever seen an injury of this extent, and the doctor immediately suspected child sexual abuse. The doctor informed the police that the injury was caused by forcing a large, rigid object repeatedly into the rectal area. Additionally, M.S. also suffered from tearing and shearing injuries to her brain that left holes in parts of

her brain and were caused by tremendous acceleration and deceleration, which is commonly the result of a shaking injury.

[4] On November 7, 1990, Sloan was questioned by the police. In his statement to the police, Sloan admitted that he struck M.S. several times on her bottom with his fist and slapped her on her face to get her to stop crying. Sloan also admitted that he stuck his penis inside the infant's rectum, although he later attempted to recant this statement. The State charged Sloan with Class A felony child molesting, Class C felony battery, and Class B felony neglect of a dependent. Sloan attempted to plead guilty to the battery count; however, the trial court declined to accept the guilty plea. A subsequent bench trial was held, at which Sloan was represented by public defender, Kevin Relphorde ("Relphorde").

[5] At the conclusion of the trial, Sloan was found guilty of all counts. During his sentencing, Sloan expressed remorse for what happened to M.S., but also maintained his innocence of any crimes other than the battery count and indicated that the baby's mother shared a lot of the blame for the injuries the baby suffered. Relphorde argued the following mitigating circumstances to the trial court: (1) Sloan's remorse; (2) Sloan's young age; (3) Sloan's lack of felony convictions; and (4) the crime was unlikely to occur again. In sentencing Sloan, the trial court found as mitigating factors: (1) Sloan's lack of a prior criminal history; and (2) Sloan's young age. The trial court found the following as aggravating factors: (1) the heinous nature of the crimes; (2) the very young age of the victim; (3) the fact that Sloan was the biological father of the victim; and

(4) that a lesser sentence would depreciate the seriousness of the crimes. Sloan was sentenced to forty-five year for the Class A felony child molesting conviction and fifteen years for the Class B felony neglect of a dependent conviction, to run consecutively for a total of sixty years. Due to double jeopardy concerns, the trial court vacated the Class C felony battery conviction. Sloan filed a direct appeal, in which he argued that his convictions violated double jeopardy and that the imposition of consecutive sentences was manifestly unreasonable. A panel of this court affirmed Sloan's convictions and sentence in an unpublished opinion. *See Sloan v. State*, No. 45A03-9202-CF-208 (Ind. Ct. App. June 9, 1992).

[6]     On October 3, 2013, Sloan filed a pro se petition for post-conviction relief, which was later amended and filed by the State Public Defender on May 2, 2014. In the petition for post-conviction relief, Sloan alleged ineffective assistance of his trial counsel for failing to present Sloan's mental health issues as a mitigating factor at sentencing and newly discovered evidence based on a subsequent diagnosis of mental illness made many years after the crime. An evidentiary hearing was held on Sloan's petition, at which he presented the following as exhibits: the record of proceedings from his direct appeal; the appellate briefs from his direct appeal; the pre-sentence investigation report ("PSI") from his sentencing; reports from his 1991 mental health evaluation done by the Indiana Department of Correction ("DOC"); and a recent mental health evaluation done by Dr. Reinaldo Matias ("Dr. Matias").

Dr. Matias is a clinical psychologist and director of mental health services for the Indiana State Prison in Michigan City, Indiana, where Sloan is incarcerated, and has been seeing Sloan as a patient for several years. Dr. Matias testified on Sloan's behalf at the evidentiary hearing. He reviewed the 1991 evaluation and the reports that were part of the PSI and found his recent evaluation of Sloan's mental condition was similar to the previous evaluations, with respect to Sloan's symptoms. Dr. Matias diagnosed Sloan as suffering from bipolar disorder and antisocial personality disorder and observed evidence that Sloan had anger control problems and could be impulsive. Sloan presented to Dr. Matias as being under a fair amount of stress and having difficulty managing the stress; Sloan also displayed a neediness for other people. Dr. Matias testified that Sloan's bipolar disorder was treatable with medication and that he had been stable for several years while on the medication. He also testified that Sloan's antisocial personality disorder was being treated with counseling. Dr. Matias stated that, when Sloan first became his patient in 2007, he had previously been diagnosed as having bipolar disorder.

In his testimony, Dr. Matias opined that Sloan had been suffering from these mental illnesses at the time he committed his crimes and that there was possibly a connection between the illnesses and the crimes. Dr. Matias believed that Sloan's childhood contributed to his mental disorders. At the time Dr. Matias evaluated Sloan, Sloan's stress had increased in the recent years, which had caused a decline in his condition. Dr. Matias also stated that, had he evaluated Sloan at the time of trial, he would have likely given Sloan the same diagnosis

as he did when he actually evaluated him. At the evidentiary hearing, Sloan testified that when he was thirteen or fourteen years of age he first received mental health treatment at Tri-City and was diagnosed as borderline schizophrenic; however, Sloan believed he had a problem with anger even before that treatment.

[9] Trial counsel, Relphorde testified at the evidentiary hearing about his representation of Sloan during sentencing. He had been practicing law for ten years at the time he handled Sloan's case and testified that, during his representation of Sloan, there was no indication that Sloan had any severe mental health issues. Relphorde said that, if he had known of any mental health issues, he would have submitted evidence of these issues to the trial court at sentencing. He further testified that his trial strategy was that Sloan was innocent of all the crimes except for the battery and that the baby's mother inflicted the injuries, which was the same strategy during sentencing.

[10] At the conclusion of the evidentiary hearing, the post-conviction court issued findings of facts and conclusions thereon, denying Sloan's petition for relief. The court found that trial counsel was not ineffective with respect to not presenting Sloan's mental health issues as mitigating at sentencing and that Sloan failed to meet his burden as to newly discovered evidence. Sloan now appeals.

## Discussion and Decision

[11] Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[12] When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact

unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

# I.  Ineffective Assistance of Trial Counsel

[13] When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State,* 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Id*. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[14] Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the

circumstances, seems best. *Perry*, 904 N.E.2d at 308 (citing *Whitener v. State,*
696 N.E.2d 40, 42 (Ind. 1998)). Isolated omissions or errors, poor strategy, or
bad tactics do not necessarily render representation ineffective. *Shanabarger v.
State*, 846 N.E.2d 702, 708 (Ind. Ct. App. 2006), *trans. denied*. The two prongs
of the *Strickland* test are separate and independent inquiries. *Manzano v. State*,
12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S. Ct.
2376 (2015). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the
ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.*
(quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537
U.S. 839 (2002)).

[15] Sloan argues that the post-conviction court erred in denying his petition for
post-conviction relief because he received ineffective assistance of trial counsel.
He specifically contends that his trial counsel, Relphorde, was ineffective during
sentencing when he failed to investigate and present evidence concerning
Sloan's mental status as a mitigating circumstance. Sloan asserts that, based on
his violent family history and the Tri-City evaluation contained in the PSI, of
which Relphorde was aware, Relphorde should have sought a psychological
evaluation prior to sentencing. Sloan claims that, if his trial counsel had
presented his mental illnesses to the trial court, it would have imposed a lesser
sentence.

[16] There are several factors that bear on the weight, if any, which should be given
to mental illness in sentencing. *Taylor v. State*, 943 N.E.2d 414, 420 (Ind. Ct.
App. 2011), *trans. denied*. These include: (1) the extent of the defendant's

inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Id*. (citing *Krempetz v. State,* 872 N.E.2d 605, 615 (Ind. 2007)), *trans. denied*. At the post-conviction hearing, Sloan did not present any evidence that he was unable to control his behavior due to his mental illness or any other limitations he suffered due to his mental health issues. Sloan did present evidence at the post-conviction hearing that he had long-standing mental health issues. However, his evidence did not establish any nexus between his mental illness and the commission of the crime. At the hearing, when asked whether he had an opinion as to whether there was a connection between Sloan's mental illnesses and his crimes, Dr. Matias testified that it was "hard to say" and it was "quite possible at the time he may have been manic or hypomanic, leading to bad judgment and possibly committed the crimes that we're addressing here." *P-C. R. Hrg. Tr*. at 16-17. The testimony of Dr. Matias, therefore, did not establish a connection between Sloan's mental disorders and the crimes for which he was convicted; at most, the testimony merely showed that it was hard to say if there was a nexus between them and it was only quite possible that Sloan was manic or hypomanic at the time he committed the crimes. Sloan has failed to demonstrate that Relphorde had any reason at the time of sentencing to investigate Sloan's mental health issues for the purpose of mitigation.

Even if Sloan's trial counsel had been deficient in his performance, Sloan cannot show any prejudice from Relphorde having not presented evidence of mental illness as a mitigating circumstance. During sentencing, the trial court found as aggravating factors the heinous nature of the crimes, the extremely young age of the victim, the fact that Sloan was the biological father of the victim, and that a lesser sentence would depreciate the seriousness of the crimes. The aggravating factor of violation of a position of trust can itself support the maximum enhancement of a sentence for child molesting. *McCoy v. State*, 856 N.E.2d 1259, 1262 (Ind. Ct. App. 2006); s*ee also Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011) ("A harsher sentence is also more appropriate when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim, such as a parent-child or stepparent-child relationship."). We conclude that, based on the valid aggravating factors found by the trial court, there was no likelihood that the presentation of Sloan's mental illnesses, which were not shown conclusively to have a nexus to the crime committed, as mitigating factors would have resulted in a reduced sentence. Sloan has, therefore, failed to show he suffered any prejudice and is unable to prove his claim of ineffective assistance of trial counsel.

## II. Newly Discovered Evidence

Newly discovered evidence mandates a new trial only when a defendant demonstrates that: (1) the evidence has been discovered since trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching;

(5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) it is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at trial. *Whedon v. State*, 900 N.E.2d 498, 504 (Ind. Ct. App. 2009) (citing *Taylor v. State,* 840 N.E.2d 324, 329-30 (Ind. 2006)), *summarily aff'd*, 905 N.E.2d 408 (Ind. 2009). "We 'analyze[ ] these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Id.* The petitioner for post-conviction relief bears the burden of showing that *all* nine requirements are met. *Id.* (emphasis in original).

[19] Sloan argues that the post-conviction court erred in denying his petition because he established newly discovered evidence that required the reduction of his sentence. He contends that his diagnosis by Dr. Matias of suffering from bipolar disorder and antisocial personality disorder and their manageability was newly discovered evidence that meets all nine of the requirements. Specifically, Sloan asserts that this evidence was discovered after he was sentenced, is relevant and material, is not cumulative or merely impeaching, is not privileged or incompetent, that due diligence was exercised to discover it before sentencing, that it is worthy of credit, can be reproduced, and would produce a different result if he is resentenced.

[20] In order to establish that newly discovered evidence warrants a new sentencing, a petitioner for post-conviction relief must show that *all* nine requirements are met. *Whedon*, 900 N.E.2d at 504. Here, the alleged newly discovered evidence

is Sloan's diagnosis of bipolar disorder and antisocial personality disorder by Dr. Matias and the disorders' manageability with treatment. The post-conviction court found that this was not newly discovered evidence warranting new sentencing because Sloan failed to show that his diagnosed mental illnesses were relevant and material or that the trial court's consideration of them would probably produce a different result at sentencing. *Appellant's App.* at 140-42. We agree.

[21] The following factors bear on the weight, if any, which should be given to mental illness in sentencing: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Taylor*, 943 N.E.2d at 420. As discussed in the previous section, Sloan has not established that he was unable to control his behavior due to his mental disorders. No evidence was presented as to what extent Sloan's mental illnesses affected his inability to control his actions. Additionally, there was no evidence presented regarding any overall limitations on Sloan's functioning that was caused by his disorders. The evidence did show that Sloan has likely suffered from bipolar disorder and antisocial personality disorder for a substantial period of time. Although he was not diagnosed as suffering from these disorders at the time of his trial, Dr. Matias testified that the findings in the 1991 DOC evaluation were very similar to his findings and that Sloan had been diagnosed as having bipolar disorder since sometime prior to Sloan

becoming his patient in 2007. *P-C. R. Hrg. Tr.* at 13-14, 20-21. Sloan also did not show that there was any conclusive nexus between his disorders and the commission of his crimes. Dr. Matias's testimony at most only established that it was "hard to say" and it was "quite possible at the time he may have been manic or hypomanic, leading to bad judgment and possibly committed the crimes that we're addressing here." *Id.* at 16-17. Therefore, the evidence did not establish a connection between Sloan's mental disorders and the crimes for which he was convicted. At most, it merely demonstrated that it was hard to say if there was a nexus between them and it was only quite possible that Sloan was manic or hypomanic at the time he committed the crimes. We, therefore, conclude that Sloan's claimed newly discovered evidence only met one of the four factors and was not shown to be relevant and material.

[22] Further, Sloan did not establish that his proffered newly discovered evidence would probably produce a different result at sentencing. During Sloan's sentencing, the trial court found as mitigating factors his lack of a prior criminal history and his young age. The trial court found several aggravating circumstances, including the heinous nature of the crimes, the extremely young age of the victim, and the fact that Sloan was the biological father of the victim and in a position of trust. Based on these valid aggravating circumstances, we conclude that Sloan has not shown any likelihood that the diagnosis of his mental disorders, which were not shown to be conclusively connected to the commission of the crimes, would have caused a difference in the sentence

imposed by the trial court. The post-conviction court did not err in denying Sloan's petition for post-conviction relief.

[23] Affirmed.

[24] Mathias, J., and Brown, J., concur.